PER CURIAM. Plaintiffs' motion to dismiss the appeal taken by Jaffe et al. must be denied, because the answering affidavits show that the appellants Jaffe and others have not parted with their interest, since the subsequent suit in the name of Mr. Whitman, as indorsee, is in fact being conducted for these appellants and on their behalf. This proceeding by suit in equity, and the decree appealed from, cannot be sustained.

Plaintiffs' signature, obtained by misrepresentation, as found by the trial court, was nevertheless affixed to a promissory note, which the complaint admits had before suit been discounted for value before maturity. Mr. W. H. Munnich twice signed, without reading over the contract or note. Plaintiffs wholly trusted to what was said to be the tenor of the paper, so that the plaintiffs allege that they, "without further examination of said contract and note, signed the same." A perusal would have shown that the second signature was to a separable promissory note. The printing, "the installment note below is to be detached by Thos. Howard Co.," though smaller than some of the display printing, nevertheless was quite legible, being in what printers call heavy faced "8 point" type.

In New York it is settled that one who signs such negotiable paper without reading it, when he can read and has opportunity to do so, though he supposes it is something entirely different, such as an order for goods, cannot set up his own omission against one who has become a bona fide holder. Chapman v. Rose, 56 N. Y. 137, 15 Am. Rep. 401; National Exchange Bank v. Veneman, 43 Hun, 241, 244; 1 Daniel on Neg. Inst. (4th Ed.) § 850.

It is an illustration of the policy to protect negotiable instruments, under the rule that, where one of two innocent persons must suffer, the loss must fall on him who reposed the confidence. See Page v. Krekey, 137 N. Y. 307, 313, 33 N. E. 311, 21 L. R. A. 409, 33 Am. St. Rep. 721. Hence this complaint did not state a cause of action of equitable cognizance.

It therefore follows that the judgment should be reversed, and the complaint dismissed, but, in the peculiar circumstances, without costs, except the appellants' taxable disbursements.

---

(163 App. Div. 823)

BITONDO v. NEW YORK CENT. & H. R. R. CO.    (No. 128-37.)

(Supreme Court, Appellate Division, Third Department.    September 23, 1914.)

TRIAL (§ 159*)—DISMISSAL—GROUNDS—MISTRIAL.

Plaintiff sued a domestic railway corporation for the death of his intestate, a track hand, run over by one of defendant's trains, while at work. The answer expressly admitted that defendant was a domestic corporation, operating a railway within the state, and denied the other allegations, alleging contributory negligence and assumed risk. Plaintiff proved that intestate left no wife, father, or mother surviving him, but left two brothers and two sisters, to the support of one of whom decedent contributed. Defendant proved that, at the time of intestate's death, he was replacing a tie in a track over which interstate trains were run, though none of these trains caused his death. Plaintiff amended the complaint

For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so as to allege that decedent's next of kin were his brothers and sisters, and the court granted defendant's motion to dismiss, on the ground that plaintiff's only cause of action was under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), and that there was no allegation that decedent left any one dependent on him. *Held,* that defendant was not entitled to avail itself of the federal Employers' Liability Act without having presented such issue by an amendment of the answer, and, if such amendment were made, plaintiff would have been entitled to amend his complaint so as to allege dependency of decedent's sister, and that there had been a mistrial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 359–367; Dec. Dig. § 159.*]

Lyon, J., dissenting.

Appeal from Trial Term, Schenectady County.

Action by Gragry Bitondo, as administrator of the goods, etc., of Rocco Bitondo, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of defendant, and from an order dismissing the complaint at the close of the evidence, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Homer J. Borst, of Schenectady (Andrew J. Nellis, of Albany, of counsel), for appellant.

Visscher, Whalen & Austin, of Albany (Robert E. Whalen, of Albany, of counsel), for respondent.

JOHN M. KELLOGG, J. The complaint alleged in paragraph 1 that at all the times stated the defendant was a domestic corporation engaged in the business of running and managing a railway from Buffalo to New York, and which railway and the tracks thereof passed through the city of Schenectady. In paragraph 2 it alleged, among other things, that the intestate was employed by the defendant as a trackhand engaged in repairing defendant's railroad tracks in Schenectady, and that the defendant's train ran over him while he was engaged in that work. The answer expressly admits paragraph 1 of the complaint; it also denied the other allegations of the complaint, and alleged that the injury occurred by the intestate's own negligence, and that he assumed the risk. The plaintiff proved, without objection, that the intestate left no wife, father, or mother surviving him, but two brothers and two sisters; one sister a widow with two children lived in Italy, and the intestate sent her $5 or $6 a month.

At the close of the plaintiff's case, defendant moved for a nonsuit upon the ground that no negligence was shown, and that it appeared that the intestate was guilty of contributory negligence, which motion was denied. Thereupon the defendant introduced evidence, and it appeared, among other things, that at the time of his death the intestate was engaged in taking out and replacing ties at track No. 2, and that the Twentieth Century Limited, the Southwestern Limited, and the Lake Shore Limited ran, one to St. Louis, and the other two to

Chicago, over track No. 2, although none of these trains caused the death. At the close of its evidence the defendant made a motion for nonsuit upon the same grounds as before, and upon the additional ground that the intestate was engaged in interstate commerce, and that the federal Employers' Liability Law, so called, of April 22, 1908, as amended by the act of April 5, 1910, furnished the only ground of recovery. The court felt constrained to grant the motion upon the latter ground. The plaintiff asked liberty to amend the complaint by alleging that the next of kin of the deceased were his brothers and sisters, which the court permitted, saying the proof already showed it, and that he left no father, mother, widow, or children.

We may assume, without further consideration, if the defense had been properly raised that the intestate was engaged in interstate commerce at the time of his death, that the federal act referred to would have furnished the only ground for recovery. Pedersen v. D. L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125. Until the motion was made at the end of the case, the issues were being tried as ones under the laws of this state. The admission in the pleadings that the defendant is a domestic corporation, engaged in running a railroad from Buffalo to New York, and that the accident occurred upon its tracks at Schenectady, and the course of the trial apparently excluded the idea that the intestate was at the time employed in interstate commerce. If the defendant had so contended, it should not have made the admission without an allegation showing the nature of its defense. The judgment must stand upon the proofs and the allegations; and the defendant was not at liberty to rely upon the federal statute as a defense under the issues being tried. To avail itself of that defense, it should have amended its answer so that the issue might be presented and tried. The evidence was admitted without objection, but apparently merely as a detail of the facts, and without any suggestion that the defendant was proving a fact entirely outside of the pleadings. The complaint does not allege that there was a dependent sister, although evidence was introduced without objection tending to prove that fact. A laboring man, 19 years old, earning $1.75 per day, sends $5 or $6 of his wages each month to his widowed sister in Italy, who has two children. Those facts are some evidence that the sister was dependent upon him. Certainly his death deprived the sister of $5 or $6 a month, which she was receiving regularly at that time. If the sister was dependent upon the decedent, then a case was established under the federal act, and it was error to nonsuit the plaintiff. Evidently the plaintiff was taken by surprise, and may not have pointed out to the court his rights as clearly as he might have done. To prevent such surprise is the very reason why pleadings are required to state the claim of the respective parties. If we disregard the pleadings and treat the proper amendments as made, then the plaintiff was entitled to go to the jury and claim a recovery on account of the dependent sister. If pleadings are still necessary, the case should have been decided upon the issue tried, namely, whether a cause of action was shown assuming that the intestate was engaged in intrastate commerce. It is the more orderly course to consider that

there was a mistrial, and that the question decided was not properly in the case. If the defendant chooses to change the issue, it should make proper application to the court for the necessary amendment. If such amendment is made, the plaintiff may, if he choose, amend the complaint.

The judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.

All concur, except LYON, J., dissenting in an opinion in which SMITH, P. J., concurs.

LYON, J. (dissenting). Plaintiff's intestate, who was a track hand in the employ of the defendant, was struck and killed by one of defendant's trains, at Schenectady, N. Y., while engaged in repairing one of defendant's main tracks over which ran the Twentieth Century Limited, the Lake Shore Limited running from New York to Chicago, and the Southwestern Limited running from New York to St. Louis. He was therefore, at the time of his death, employed by the respondent in interstate commerce. Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 152, 33 Sup. Ct. 648, 57 L. Ed. 1125; Second Employers' Liability Cases, 223 U. S. 1, 51, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; San Pedro, L. A. & S. L. R. R. Co. v. Davide (C. C. A.) 210 Fed. 870; Eng v. Southern Pac. Co. (D. C.) 210 Fed. 92; Barlow v. Lehigh Valley R. R. Co., 158 App. Div. 768, 143 N. Y. Supp. 1053.

The proofs upon the trial were sufficient to warrant the submission to a jury of the issues of negligence and contributory negligence. At the close of the evidence, the court granted a nonsuit upon the ground that the intestate left him surviving no persons entitled to recover under the federal Employers' Liability Act as being next of kin dependent upon the decedent for support. Concededly the intestate left neither father, mother, wife, or children, and his next of kin were two brothers and two sisters (the latter residing in Italy), each of whom was upwards of 21 years of age. No claim is made that the decedent ever contributed any sum whatever toward the support of either of his brothers or of his unmarried sister, or that either was in any way dependent upon him for support. The decedent did, however, more or less frequently, send money to the older sister in Italy. The testimony upon the subject was given by a companion of decedent, and is as follows:

"Q. And did you ever write letters through Rocco (decedent) to her? A. Yes. Q. And what was there about sending money? A. Yes, we send money every month. Q. How much money each month? A. Well, according. Sometimes $5 or $6 every month. Q. And was the sister married, and did she have children? A. Yes. Q. Her husband dead? A. Yes, dead between three or four years."

Decedent was about 19 years of age and the sister about 40. It can hardly be said, in the absence of all other evidence relating to the subject, that this testimony furnished evidence of the sister's dependence upon decedent sufficient to warrant the submission of that question to the jury. For aught that appears, the decedent may have

sent the money as a mere gratuity, or as often the case with foreigners, especially those contemplating returning to their own country, for deposit, or to the sister of much more mature years than he to care for, for him. The testimony appears to have been introduced for the purpose of showing the frugality of the decedent rather than for the purpose of proving that the sister was dependent upon the brother for support, the burden of establishing which was upon the appellant, for nowhere in the record is there to be found any suggestion upon the part of the appellant's counsel that the sister was dependent for support upon decedent. That the appellant made no claim that the sister was thus dependent, or that the evidence was sufficient to warrant the submission of that question to the jury, but claimed that the sister was not dependent, is also manifest from the discussion between the respective counsel and the court at the close of the evidence, the respondent having at that time moved to dismiss the complaint upon the grounds, among others, that the decedent was employed by the respondent in interstate commerce at the time of his death; that the federal Employers' Liability Act was exclusive; and that it affirmatively appeared that the decedent left no next of kin dependent upon him. This discussion occurred upon reassembling the following morning:

"The Court: The motion is to dismiss. * * * Now the United States courts have uniformly held that it is exclusive, that it takes the place of all other remedies in that field, and where the federal act applies there is no other. You say it does not apply here because there is no dependent, but the difficulty with that is, it seems to me, it does not go to the question of whether or not the federal act applies to the facts of the case. It does apply to the facts of the case, but there is no one here who can enforce the facts. Appellant's Counsel: The state statute provides a cause of action for the next of kin. The federal statute also provides a remedy for dependent next of kin. Remember this is a mere incident that the man died. The Court: But they do not make any such distinction. They say it is exclusive. Appellant's Counsel: I know it is exclusive, judge, only to those who have the remedy."

Thereupon the court, in connection with other statements, suggested the withdrawing by appellant of a juror.

"Appellant's Counsel: Would your honor permit me to amend the complaint to allege squarely in the complaint, so that the thing can be beyond cavil, that the next of kin are brothers and sisters of the deceased? The Court: I will permit you to do so that you can have your record complete. Appellant's Counsel: We do not ask to withdraw a juror. We will take your honor's ruling."

Thereupon the court granted a nonsuit, to which exception was duly taken. Thus appellant's counsel, who were fully competent to care for the rights of appellant, not only did not ask to amend the complaint by alleging the dependency of the sister, or to recall the companion of decedent, through whom the money was sent, or to recall the appellant, who was the brother of decedent, both of whom were present at the trial and testified as witnesses for the appellant, but without asking to go to the jury, or making the claim that the sister was dependent, the appellant elected to amend his complaint by alleging that the next of kin were the brothers and sisters of decedent, and to stand upon appellant's alleged right to recover for their ben-

efit. Furthermore, appellant's counsel make no claim in their brief before this court that the sister was dependent upon the decedent for support, or that, under the evidence, that question was one which should have been submitted to the jury, or that there was a mistrial. Appellant's position at the trial and upon this appeal constitutes practically a concession that no dependency existed. The appellant stands here, as upon the trial, upon the broad proposition that the statutory right of action given in this state for the benefit, in this case, of the brothers and sisters as next of kin has not been superseded by the right of action given by the federal statute to such only, if any, of the brothers and sisters as might be legally dependent upon the decedent; and that it was not the intent of the federal statute to take away a right of action which a person had under the state statute, unless such person was given a right of action under the federal statute. That the federal statute was paramount and exclusive, superseding the state statute, has been repeatedly held by the United States Supreme Court. Southern Railway Co. v. Reid, 222 U. S. 444, 32 Sup. Ct. 145, 56 L. Ed. 263; St. Louis, San Francisco & Texas Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129; No. Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591; Seaboard A. L. R. R. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 638 (58 L. Ed. 1062). In the latter case it was said:

"But it is settled that since Congress, by the act of 1908, took possession of the field of the employers' liability to employés in interstate transportation by rail, all state laws upon the subject are superseded."

The fact that the complaint alleges, and the answer admits, that the respondent is a domestic corporation, engaged in the business of running and managing a railway from Buffalo to New York, does not prevent the respondent claiming that a federal statute was applicable to its operation. Even though a domestic corporation, its track, which the intestate was engaged in repairing at the time he was killed, was used for the purpose of interstate as well as intrastate commerce. The evidence that the track which was being repaired was so used was admitted without objection.

The only question of fact which appellant's counsel in their brief claim should have been submitted to the jury was as to whether decedent was engaged in interstate commerce at the time of his death. This, under the conceded facts, was a question of law.

In view of all the facts, no good reason can be given why the parties should be put to the expense and delay of a retrial. As the questions which the appellant desires to have determined are clearly presented by the present record, the appellant should be allowed to prosecute his appeal without a retrial of the action.

The judgment appealed from should be affirmed.